# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK DELANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-133-STE |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ)

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and he is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

issued an unfavorable decision. (TR. 23-34). Subsequently, the Appeals Council denied Plaintiff's request for review,[2] making the ALJ's decision the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2014, his alleged onset date. (TR. 25). At step two, the ALJ determined that Mr. Delaney had the following severe impairments: atrial-fibrillation; anxiety disorder; and alcohol abuse/addiction disorder. (TR. 25). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26).

At step four, the ALJ concluded that Mr. Delaney had no past relevant work, but retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except as follows: The claimant should avoid climbing ladders, ropes, or scaffolds. He can frequently stoop, crouch, kneel and balance. He can occasionally climb ramps or stairs. He should avoid exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions (Note: not all moving machinery is dangerous—such as machinery where moving parts are shielded). He is capable of doing unskilled work consisting of simple and routine tasks with routine supervision that require[s] only that he be able to understand, remember, and carry out simple instructions. He can relate to supervisors and coworkers on a superficial work related basis and can adapt to a work situation. He should avoid contact with the public (meaning interaction with

---

[2] (TR. 1-3).

2

the public is not part of the job duties, and any contact in most cases would be incidental and superficial).

(TR. 32, 28). With this RFC, the ALJ proceeded to step five and presented these limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 60-61). Given the limitations, the VE identified six jobs from the Dictionary of Occupational Titles (DOT). (TR. 61-62). The ALJ adopted the VE's testimony and concluded that Mr. Delaney was not disabled at step five. (TR. 33-34).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Mr. Delaney alleges the ALJ erred in evaluating opinions from consultative examining psychologist, Suzan P. Simmons, Ph.D. (ECF No. 15:4-9).

## V. THE ALJ'S EVALUATION OF MEDICAL OPINIONS

The ALJ committed legal error in evaluating opinions of Dr. Simmons.

### A. The ALJ's Duty to Evaluate Medical Opinions

An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to accord any medical opinion, an ALJ must consider:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship,

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) the consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Hamlin*, at 1215, n. 7. Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285,

1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B.  Opinions from Dr. Simmons

In November and December 2015, Dr. Simmons performed consultative psychological examinations on Mr. Delaney[3] and stated:

- he was "not a candidate for employment at th[at] time" (November 2015);

- "it is perceived that [Mr. Delaney] continues to abuse alcohol and engage in questionable judgment which will likely influence his mental health and his ability to be a consistent employee" (December 2015); and

- "In an employment situation [Plaintiff] will need the opportunity to learn through repetition and use of compensatory strategies that preferably utilize both auditory and visual cues until the information becomes encoded." (December 2015).

(TR. 652, 659).

### C.  The ALJ's Evaluation of Dr. Simmons' Opinions

In the decision, the ALJ acknowledged Dr. Simmons' findings and stated:

Dr. Simmons … opined the claimant "is not a candidate for work at this time." This implies that the claimant is not attempting to obtain employment at this time and the undersigned concurs with the literal reading given there

---

[3] (TR. 648-661).

5

> is no evidence the claimant is seeking employment. Dr. Simmons does not offer opinions on the claimant's ability to work other than continued alcohol abuse will likely influence his mental health and interfere with his ability to be a consistent employee. Substance abuse is no longer covered under the mental listings. There is no question that continuing alcohol abuse would interfere with consistent employment, but that is not grounds for disability because alcohol abuse would by definition be a material factor if it prevented gainful employment. Alcohol abuse can contribute to the severity of mental impairments (even though no longer contained in the mental listing), but Dr. Simmons does not opine that the claimant's mental impairments preclude simple repetitive unskilled work.

(TR. 31).

### D. Error in the ALJ's Evaluation of Dr. Simmons' Opinion

Plaintiff alleges the ALJ improperly evaluated Dr. Simmons' three findings as set forth, *supra*. (ECF No. 15:4-9). The Court agrees, but only with respect to the second and third findings.

First, Plaintiff alleges "[t]he ALJ … erred by mischaracterizing Dr. Simmons' statement in November 2015 that '[h]e is not a candidate for employment at this time.' " (ECF No. 15:8). According to Plaintiff, the ALJ wrongly interpreted the statement to mean that Mr. Delaney was not actively looking for work; but Plaintiff argues that another reading of Dr. Simmons' statement was that Mr. Delaney *was not capable* of work. (ECF No. 15:8). Although Plaintiff argues error in the ALJ's interpretation of Dr. Simmons' statement, Mr. Delaney concedes that his interpretation would "amount to an opinion from Dr. Simmons that Mr. Delaney is disabled, which is, of course, an issue reserved to the Commissioner." (ECF No. 15:8). Notwithstanding that fact, Plaintiff still argues that the ALJ wrongly discounted the statement based on a misinterpretation of the evidence. (ECF No. 15:8-9). The undersigned disagrees, however, because the argument essentially

hinges on the ALJ's interpretation of the evidence. Although Plaintiff interprets the evidence differently, this fact does not provide a basis for reversal. See *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (noting that the Court "may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citation omitted).

Plaintiff's second challenge involves Dr. Simmons' finding that "[Mr. Delaney] continues to abuse alcohol and engage in questionable judgment which will likely influence his mental health and his ability to be a consistent employee." (ECF No. 15:4-5); *see* TR. 659. According to Mr. Delaney, Dr. Simmons' comment regarding Plaintiff's ability to "be a consistent employee" was based on two findings: (1) Plaintiff's continued use of alcohol and (2) Plaintiff's engagement in "questionable judgment." (ECF No. 15:4). It is the latter finding that Mr. Delaney challenges, arguing: "The ALJ completely ignored Mr. Delaney's propensity to engage in questionable judgment as an impairment that will affect his ability to work." (ECF No. 15:4). Again, two interpretations of Dr. Simmons' comments exist. First, it is reasonable to conclude that Dr. Simmons' statement concerned a single opinion—that Plaintiff's "questionable judgment" was a direct result of his alcohol abuse, which, in turn, would impair his ability to be a "consistent employee." The second interpretation is that proffered by Mr. Delaney—that Dr. Simmons' comment consisted of two distinct opinions: alcohol abuse and engagement in questionable judgment. Indeed, it appears as though the ALJ took the latter approach, as evidenced by his omission of the "questionable judgment" portion of Dr. Simmons' finding. *See* TR. 31 ("Dr. Simmons

7

does not offer opinions on the claimant's ability to work other than continued alcohol abuse will likely influence his mental health and interfere with his ability to be a consistent employee."). Thus, Mr. Delaney correctly argues that the ALJ's discussion "ignores Mr. Delaney's propensity to engage in questionable judgment." (ECF No. 15:5).

The Court finds that Dr. Simmons' statement that Plaintiff "continues to … engage in questionable judgment which will likely influence his mental health and his ability to be a consistent employee" is a "medical opinion" as that term is defined. *See Lackey v. Barnhart,* 127 F. App'x 455, 457 (10th Cir. 2005) (defining "medical opinions," as statements which reflect "judgments about the nature and severity of a claimant's impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical and mental restrictions.") (alterations and internal quotation marks omitted); *accord* 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). To this end, the ALJ had a duty to discuss the opinion and explain his treatment of the same. *See supra*. He failed to do so, and the error warrants remand.

Finally, Plaintiff alleges error in the ALJ's failure to discuss Dr. Simmons' opinion that: "In an employment situation [Plaintiff] will need the opportunity to learn through repetition and use of compensatory strategies that preferably utilize both auditory and visual cues until the information becomes encoded." (ECF No. 15:5-8). In response, Defendant presents five arguments, none of which have merit.

First, Mr. Saul argues that "substantial evidence supports the ALJ's finding that Plaintiff could perform a range of simple, routine, unskilled work." In support, Defendant cites:

8

- The ALJ's reliance on opinions from State Agency opinions which support the RFC;

- The fact that the ALJ "reasonably discounted Plaintiff's subjective claims of debilitating symptoms and limitations based on evidence [of] … [Plaintiff's] daily activities[;]" and

- Plaintiff's statement that his "anxiety was 'controlled for the most part.' "

(ECF No. 18:7-9).

This argument fails for three reasons. First, as stated, a review of the State Agency physicians' opinions indicates that they did not consider this portion of Dr. Simmons' opinion. (TR. 86-87, 104). Thus, any reliance on the same would still suffer from the inherent flaw with the ALJ having overlooked the opinion. Second, the fact that the ALJ had discounted Plaintiff's subjective allegations based on evidence of daily activities is completely irrelevant to whether the ALJ had properly considered Dr. Simmons' opinion. The ALJ did not state that he had discounted Dr. Simmons' opinion based on Plaintiff's ability to perform daily activities, and Defendant's suggestion otherwise constitutes an improper *post hoc* rationalization. *See Haga v. Astrue,* 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner."). Third, Dr. Simmons did not tie her opinion to Plaintiff's anxiety. *See* TR. 658-659. Thus, Defendant's reliance on Plaintiff's statement that his anxiety was "controlled for the most part" was misplaced.

Second, the Commissioner states: "[T]he ALJ expressly considered Dr. Simmons's comment that Plaintiff would need to learn through repetition, visual cues, and auditory

9

cues. The ALJ reasonably found, however, that this comment did not provide an opinion on his ability to work." (ECF No. 18:10). In support, Mr. Saul cites the ALJ's statement that "Dr. Simmons d[id] not offer opinions on [Plaintiff's] ability to work other than [another comment, about Plaintiff's ability to be a consistent employee despite ongoing alcohol abuse.]" (ECF No. 18:10) (alterations in original). This argument is flawed, however, because the cited statement represents a mischaracterization of the record. Although the ALJ made the finding, it is inaccurate—Dr. Simmons *did* offer other opinions regarding Plaintiff's ability to work outside of the impairment owing to alcohol abuse— namely the opinion at issue—which stated that Plaintiff would require special accommodations involving repetition through auditory and visual cues to succeed at employment.

Third, Defendant argues that "Dr. Simmons did not opine that this [need for repetition through auditory and visual cues] would preclude [Plaintiff] from learning or performing simple, unskilled work." (ECF No. 18:10). Defendant is correct. Dr. Simmons made no such finding. But Plaintiff's argument fails to address the fact that Dr. Simmons rendered an opinion regarding specific, work-related needs that Plaintiff would require to succeed in employment. The ALJ's failure to consider the opinion is error. *See Nichols v. Colvin*, No. CIV-14-179-R, 2015 WL 930178, at *2–3 (W.D. Okla. Mar. 3, 2015) (finding error due to the ALJ's failure to discuss a medical opinion that the plaintiff would need special accommodations to succeed in employment, including "[v]isual to auditory lessons").

Fourth, the ALJ cites an "evidentiary conflict" between opinions from the State Agency psychologists and Dr. Simmons, which was resolved in favor of the former. (ECF No. 18:11). According to the Commissioner, Mr. Delaney's "insistence that Dr. Simmons's comment warranted the inclusion of an additional RFC limitation … merely asks the Court to reweigh the evidence … which is not the Court's role." (ECF No. 18:11-12). The Court disagrees. Plaintiff is not asking the Court to re-weigh the evidence in his favor, but instead contends that the ALJ committed legal error in failing to properly consider Dr. Simmons' opinion and provide an explanation for his treatment of the same.

Finally, Defendant essentially argues that the ALJ's failure to discuss Dr. Simmons' "learning strategies" opinion was harmless in light of the fact that the jobs relied on at step five require Specific Vocation Preparation (SVP) 2 and "very low General Educational Development (GED) language and reasoning levels." (ECF No. 18:12). These arguments are not persuasive. First, according to SSR 00–4p, the DOT Specific Vocational Preparation (SVP) designation for a job describes the skill level and corresponds to the skill level definitions contained in the Social Security Regulations, 20 C.F.R. §§ 404.1568, 416.968. "[U]nskilled work corresponds to an SVP of 1–2." SSR 00–4p, 2000 WL 1898704 at *3 (Dec. 4, 2000). Here, the Commissioner correctly states that all of the jobs identified at step five have an SVP level of 2. (TR. 33). But as noted by the Social Security Administration:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.... Any impairment-related limitations created by an

>individual's response to demands of work ... must be reflected in the RFC assessment.

SSR 85–15, 1985 WL 56857, at *6.

Dr. Simmons opined that Plaintiff will need particular strategies—i.e., involving repetition through auditory and visual cues—to help him learn. Simply because the jobs identified at step five are classified as "unskilled, SVP 2," does not mean Mr. Delaney is able to perform such jobs. Under SSR 85-15, Plaintiff's condition (as identified by Dr. Simmons) "may make performance of [such jobs] as difficult as an objectively more demanding job." But the ALJ's failure to consider the impact of Dr. Simmons' opinion prevents the Court from making a finding either way.

Defendant seems to believe that "very low General Educational Development (GED) language and reasoning levels" required by the step five jobs render Mr. Delaney able to perform them. By way of example, Mr. Saul cites the jobs of "small product assembler" and "conveyor-line bakery" as requiring only the ability to " '[c]ompare similarities and difference between words and ... numbers,' and the job instructions may be oral or very short and simple (one to two steps only)." (ECF No. 18:12). Again, Defendant's argument misses the mark. Low GED language and reasoning levels do not speak to Plaintiff's very specific need as outlined by Dr. Simmons. Even though the job instructions "may be oral or very short and simple," Plaintiff would need an accommodation which allowed for repetition of the instructions using visual and/or auditory cues. The ALJ was entitled to disagree, but he was required to consider the opinion and provide an explanation why. His failure to do so warrants remand.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. As discussed, the ALJ failed to consider, and then explain his treatment of Dr. Simmons' opinions that Plaintiff: (1) engaged in questionable judgment which would likely influence his mental health and his ability to be a consistent employee and (2) would require the opportunity to learn through repetition and use of compensatory strategies that preferably utilize both auditory and visual cues to succeed in employment. Accordingly, the Court **REVERSES AND REMANDS** the Commissioner's decision for further consideration of Dr. Simmons' opinion consistent with this opinion.

ENTERED on November 22, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE